UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO.:  5:23CV-66-BJB
(ELECTRONICALLY FILED)

SECURA INSURANCE, A MUTUAL COMPANY            PLAINTIFF

v.          **COMPLAINT FOR DECLARATORY JUDGMENT**

JOHN THOMPSON            DEFENDANT

\* \* \* \* \*

Comes now, Plaintiff, SECURA Insurance, a Mutual Company, and for its Complaint for Declaratory Judgment, filed pursuant to 28 U.S.C. § 2201, respectfully states as follows:

### I. PARTIES

1. Plaintiff, SECURA Insurance, a Mutual Company, is an insurance company that is authorized to do business in the Commonwealth of Kentucky, and a citizen of the State of Wisconsin.

2. Defendant, John Thompson, is a resident of the Commonwealth of Kentucky.

### II. JURISDICTION AND VENUE

3. Because, at all relevant times herein, this case was and is a case between a Kentucky resident and citizen and a Wisconsin corporation, domiciled in Wisconsin, and maintaining its principal place of business in Wisconsin, there is a complete diversity of citizenship under 28 U.S.C. §1332(A) and (C)(1).

4. In this matter, Defendant has asserted that he is entitled to payments under Policies of Insurance issued by Plaintiff in the amount of $305,819.50. The amount in controversy requirement for diversity jurisdiction in this Court is satisfied, pursuant to 28 U.S.C. §1332.

5. Plaintiff seeks a Declaratory Judgment pursuant to 28 U.S.C. § 2201 that no insurance coverage is available to Defendant for certain claims made by Defendant under Policies

of Insurance issued to him by Plaintiff.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the events or omissions giving rise to the claims which have necessitated this Complaint for Declaratory Judgment occurred within the jurisdictional boundaries of this Court.

### III. FACTS

7. The claims that are the subject of this Complaint for Declaratory Judgment arose from claims made for alleged damage to property owned by Defendant.

8. Plaintiff issued a Business Protector Policy, Policy Number 20-BP-003275747 [hereinafter "The Policy"] to Named Insured John Thompson, effective October 23, 2021 to April 23, 2022, and October 23, 2022 to October 23, 2023. (Certified Copies of the Policies are attached hereto as Exhibit A and B.)

9. The Policy provides coverage for a building located at 123 W. 7th Street, Hopkinsville, KY 42240.

10. Defendant submitted a claim, SECURA Claim Number C0137453, in which he claimed damage to his property and Business Income Loss for Date of Loss, July 22, 2022.

11. Defendant claimed that damage initially arose from alleged vandalism by JC Home Improvements & Remodeling LLC, a roofing contractor, while the roof was being replaced.

12. Upon information and belief, JC Home Improvements & Remodeling LLC, allegedly disputes any vandalism occurred.

13. Defendant claimed that the roof was left unfinished on July 22, 2022, and that subsequent rainfall caused water intrusion from the alleged damaged roof, causing water damage.

14. Pursuant to the terms of The Policy issued by Plaintiff to Defendant, Plaintiff made payments to Defendant for claims made that were not in dispute.

15. Plaintiff made advance payments for claimed damages from the July 22, 2022, loss totaling $220,170.48 for the alleged property damage and $10,533.00 for claimed Business Income Loss for total payments of $230,703.48.

16. A dispute arose between the parties as to additional claims under The Policy.

17. Defendant claimed an additional $241,159.50 as "additional completion costs," 64,660.00 for alleged "money owed for rental units."

18. Pursuant to the conditions of The Policy, Plaintiff attempted to schedule an Examination Under Oath of Defendant to address the remaining claims for which Plaintiff needed additional information in order to determine whether the claims were covered under The Policy.

19. On February 7, 2023, Plaintiff advised that it was invoking the condition of The Policy to take an Examination Under Oath of Defendant.

20. On that same date, Plaintiff offered to schedule the Examination Under Oath at a time convenient for Defendant.

21. On February 22, 2023, when Defendant failed to provide a date or time for his Examination Under Oath, Plaintiff again sent correspondence with three dates for Defendant's Examination Under Oath.

22. On February 23, 2023, Plaintiff scheduled the Examination Under Oath to occur at the Christian County Justice Center on March 8, 2023, at 10:30 a.m. CST.

23. On that same date, Defendant agreed to appear for an Examination Under Oath on that day and time, but advised he would not agree to location.

24. Four days later, on February 27, 2023, Defendant advised that he would not appear for an Examination Under Oath until he retained counsel, and that his counsel would be in contact with the undersigned.

25. On March 2, 2023, Defendant advised that he had not obtained an attorney and the Examination Under Oath would need to be delayed.

26. Based on Defendant's representations that he did not intend to appear at the March 8, 2023, Examination Under Oath, on March 6, 2023, Plaintiff cancelled the Court Reporter and conference room, confirmed same with Defendant, and advised that if Plaintiff heard nothing further from Defendant by March 16, 2023, Plaintiff would follow up to get the Examination Under Oath scheduled.

27. On March 22, 2023, having heard nothing further from Defendant or counsel representing him, Plaintiff sent correspondence to Defendant advising that it would proceed with the Examination Under Oath on April 17, 2023 at 10:30 a.m. CST at the Christian County Justice Center.

28. On April 6, 2023, Plaintiff again sent correspondence to Defendant confirming that it had scheduled his Examination Under Oath for April 17, 2023, at 10:30 a.m. CST at the Christian County Justice Center.

29. On April 7, 2023, and April 10, 2023, Defendant advised that he would not attend an Examination Under Oath until he retains an attorney.

30. On April 12, 2023, Defendant again confirmed that he would not appear at the Examination Under Oath before retaining counsel.

31. Plaintiff has made several attempts since February 7, 2023, to obtain Defendant's Examination Under Oath, to no avail.

32. Defendant has refused to provide a date for an Examination Under Oath, as required by The Policy, and continues to delay resolution of the remaining claims.

33. Despite receiving advanced payments of $220,170.48 from Plaintiff, with the last

payment having occurred on September 12, 2022, it appears that the work on the roof was not completed.

34. Defendant subsequently submitted a claim (SECURA Claim Number C0148121) for alleged damage to the building for wind damage with a date of loss of March 3, 2023.

35. Plaintiff made payments to Defendant for the claims made for the March 3, 2023, date of loss.

36. Defendant subsequently submitted a claim (SECURA Claim Number C0149588) for alleged damage to the building for wind damage with a date of loss of March 31, 2023.

37. The damage alleged for the date of loss of March 31 2023, appears to overlap with the damage alleged for the July 22, 2022, loss.

38. The March 31, 2023, claim is still pending.

## IV. INSURANCE POLICIES

39. Plaintiff issued a Business Protector Policy, Policy Number 20-BP-003275747 [hereinafter "The Policy"] to Named Insured John Thompson effective October 23, 2021 to April 23, 2022, and October 23, 2022 to October 23, 2023.

40. The Policy provides Common Policy Conditions, which include:

**COMMON POLICY CONDITIONS**

**All Coverage Parts included in this policy are subject to the following conditions:**

…

**C. Examination Of Your Books And Records**

**We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.**

(Exhibit A p. 24; Exhibit B p. 22.)

41. The Policy sets forth the Commercial Property Conditions to coverage under the Policy:

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

(Exhibit A p. 72; Exhibit B p. 68.)

42. The Policy contains the Commercial Property Building and Personal Property Coverage Form, which also contains Loss Conditions as follows:

## BUILDING AND PERSONAL PROPERTY
## COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and

what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.,** Definitions.

…

### E. Loss Conditions

The following conditions apply in addition to the

Common Policy Conditions and the Commercial

Property Conditions.

…

### 3. Duties In The Event Of Loss Or Damage

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

(Exhibit A pp. 48, 56, 57; Exhibit B pp. 44, 52, 53.)

43. With respect to Business Income, the Policy likewise sets forth Loss Conditions:

### BUSINESS INCOME (AND EXTRA EXPENSE)
### COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.,** Definitions.

…

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and

the Commercial Property Conditions.

…

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

(Exhibit A pp. 63, 67; Exhibit B pp. 59, 63.)

**COUNT I – REQUEST FOR DECLARATORY JUDGMENT OF NO COVERAGE**

44. By refusing to appear at an Examination Under Oath, and to produce records, Defendant has breached the Loss Conditions of the Policy.

45. Defendant has breached the Loss Conditions under the Policy issued to him by Plaintiff.

46. By failing to abide by valid Loss Conditions under the Policy, Plaintiff owes no duty to provide coverage to Defendant for the claimed remaining losses.

47. Coverage under the Policy is barred by Defendant's breach of the valid Loss Conditions.

48. Plaintiff expressly reserves the right to, and does incorporate herein and rely upon all portions of the attached Exhibits A and B not specifically addressed in the above counts and/or not specifically herein pled, in support of this Complaint for Declaratory Judgment.

**COUNT II – REQUEST FOR AN ORDER COMPELLING DEFENDANT TO ATTEND AN EXAMINATION UNDER OATH AND TO PERMIT INSPECTION OF HIS RECORDS**

49. As a valid condition under The Policy, Defendant is required to appear at an Examination Under Oath.

50. To date, Defendant has failed to abide by the Loss Conditions of The Policy.

51. In the alternative to a Declaratory Judgment, Plaintiff requests that Defendant be compelled to attend an Examination Under Oath and to permit Plaintiff to inspect Defendant's records at a date and time as set by the Court.

**WHEREFORE**, Plaintiff, , respectfully demands as follows:

1. For a Judgment, pursuant to 28 U.S.C. § 2201, that it owes no insurance coverage to Defendant.

2. For Defendant to be compelled to attend the Examination Under Oath and to produce requested records.

3. For its costs and fees expended herein; and

4. For any and all other relief, both legal and equitable, to which Plaintiff, SECURA Insurance, a Mutual Company, may be entitled.

/s/Deanna M. Marzian Tucker
Deanna M. Marzian Tucker
BARNES MALONEY PLLC
401 W. Main Street, Suite 1600
Louisville, KY 40202
T: (502) 583-4777
F: (502) 583-4780
dtucker@sbmkylaw.com
*Counsel for Plaintiff, SECURA Insurance, a Mutual Company*